## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LAVENDER HEALTH CARE, LLC,

     Plaintiff,

v.                                 Case No: 8:20-cv-2289-CEH-TGW

REDSTONE LLC,

     Defendant.

_____/

## O R D E R

This matter comes before the Court upon Defendant's Motion to Dismiss Amended Complaint, Join Indispensable Party or Dismiss Counts III and VI, Strike Punitive Damages Claim and Incorporated Memorandum of Law in Support [Doc. 19] and Plaintiff's Opposition [Doc. 25]. In the motion, Defendant argues that the claims are deficient and subject to dismissal, that Plaintiff improperly seeks punitive damages, and that a necessary and indispensable party has not been joined with regard to Counts III and VI for civil conspiracy and a Sherman Act violation. The Court, having considered the motion and being fully advised in the premises, will **GRANT-IN-PART** and **DENY-IN-PART** Defendant's Motion to Dismiss Amended Complaint, Join Indispensable Party or Dismiss Counts III and VI, Strike Punitive Damages Claim and Incorporated Memorandum of Law in Support.

## I.   BACKGROUND[1]

Plaintiff, Lavender Health Care, LLC is a limited liability company organized under the laws of Florida. [Doc. 12 ¶ 1]. On September 12, 2009, one of Plaintiff's two members, Richard Kimsey, entered into a Master Developer Agreement (MDA) with Doctors Express Franchising, purchasing the exclusive rights to open and manage Doctors Express urgent care centers in Tampa Bay, St. Petersburg, Sarasota, and Fort Myers, Florida—the specified territory—as the Master Developer. *Id.* ¶¶ 9-11, 13. Plaintiff paid a fee of $194,400 to become the Master in the designated territory. *Id.* ¶ 12. The MDA was assigned by Kimsey to Plaintiff on October 12, 2009. *Id.* ¶ 16.

Under the terms of the MDA, if Plaintiff referred any prospect to Doctors Express and that prospect signed a franchise agreement to operate a business in the designated territory, Plaintiff would receive from Doctors Express fifty percent (50%) of the Initial Franchise Fee paid by the prospect. *Id.* ¶ 14. The MDA also provided that Plaintiff would receive from Doctors Express 2.5% of the gross sales from each of the franchises in his exclusive territory in exchange for Plaintiff's efforts, investment of time and resources in developing, managing and supporting the franchisees in his purchased territory. *Id.* ¶ 15.

Subsequently, Doctors Express sold its assets and liabilities to DRX Urgent Care, LLC, and in April 2013, American Family Care LLC (AFC) acquired these

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint [Doc. 12], the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir. 1983).

assets and obligations. *Id.* ¶¶ 17, 18. This included the MDA between Doctors Express and Plaintiff. *Id.* ¶ 19. In or about January 2017, Defendant, Redstone was introduced by AFC to Plaintiff and other Master Developers, as a resource to assist the Master Developers in developing their master territories. *Id.* ¶ 21. Redstone was fully aware of Plaintiff's MDA and Plaintiff's rights in the master territory set forth in the MDA. *Id.* ¶ 23. Plaintiff cooperated and worked with Redstone as a resource to locate prospective franchisees in its master territory. *Id.* ¶ 22.

On or about August 27, 2018, Redstone, (then d/b/a American Development Partners) entered into an Area Development Agreement ("ADA") with American Franchising LLC and/or its affiliate. *Id.* ¶ 24. Pursuant to the ADA, Redstone purportedly purchased the exclusive rights to develop urgent care centers in a specified territory consisting of the three largest counties located within the master territory previously granted to Plaintiff. *Id.* ¶ 25. Redstone had the right to purchase 17 franchise licenses for locations within Plaintiff's master territory. *Id.* ¶ 26. Redstone entered into the ADA, despite knowing of Plaintiff's rights under the MDA. *Id.* ¶¶ 23, 24.

Plaintiff was subsequently informed by AFC that all future prospects Plaintiff brought to AFC in the three largest counties within the master territory previously granted to Plaintiff must be brought in only through Redstone. *Id.* ¶ 27. This severely damaged Plaintiff's ability to develop franchises in its purchased master territory. *Id* ¶ 28. The actions of Redstone replaced Plaintiff's role as a Master Developer in its

purchased territory and caused AFC to terminate Plaintiff's MDA, without notice and without cause. *Id.* ¶¶ 29, 30. Plaintiff was severely damaged as a result. *Id.* ¶ 31.

On September 29, 2020, Plaintiff filed this action against Redstone. [Doc. 1]. The Amended Complaint alleges six counts. [Doc. 12]. In **Count I**, Plaintiff alleges that Redstone *tortiously interfered with its business relationship* with AFC and prospective franchisees and its prospective advantage of significant future benefits. *Id.* ¶¶ 32-45. Plaintiff further alleges that Redstone induced AFC to breach and terminate the MDA contract with Plaintiff. *Id.* ¶ 37. **Count II** asserts a claim for *tortious interference with contractual obligations*. *Id.* ¶¶ 46-51. There, Plaintiff alleges that Defendant persuaded AFC that it could do a better job of locating and developing prospective franchisees in Plaintiff's territory and that based upon these representations AFC granted Redstone the ADA and improperly terminated its MDA contract with Plaintiff. *Id.* ¶¶ 48-49. In **Count III**, Plaintiff asserts a claim for *civil conspiracy*, and alleges that Redstone and AFC conspired to unlawfully usurp Plaintiff's territory, and franchisee prospects, and knowingly agreed to engage and did engage in one or more overt acts in pursuit of the conspiracy. *Id.* ¶¶ 52-55. **Count IV** alleges that Redstone's actions in entering into the ADA and in pursuing franchisees in Plaintiff's territory constitute unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive practices in *violation of the Florida Deceptive and Unfair Trade Practices Act,* (FDUTPA), Fla. Stat. § 501.201, *et seq. Id.* ¶¶ 56-61. **Count V** is a claim for *fraud* and alleges that Defendant represented to Plaintiff that it was acting in Plaintiff's best interests in locating and

referring franchisees in Plaintiff's territory, did not intend to and failed to perform in accordance with those representations, and that Plaintiff reasonably relied on those representations and has been severely damaged as a result. *Id.* ¶¶ 62-66. In **Count VI**, Plaintiff asserts a claim for *violation of the Sherman Act*. *Id.* ¶¶ 67-74. There, Plaintiff alleges that the actions of Redstone in entering the ADA and pursuing franchisees in Plaintiff's territory and the termination of Plaintiff's MDA was a combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce, and that Redstone is attempting to establish a monopoly. *Id.* ¶¶ 69-70.

Defendant has moved to dismiss the Amended Complaint in its entirety, strike all requests for punitive damages, and direct joinder of an indispensable party or dismissal of the civil conspiracy and Sherman Act claims if joinder cannot be maintained. [Doc. 19 at p. 1]. More specifically, Defendant argues that Counts I and II are both subject to dismissal because they fail to allege that Redstone unjustifiably interfered with any business and contractual relationships between Plaintiff and AFC because the MDA did not provide for exclusive rights. *Id.* at p. 9. Next, Defendant argues that Count III fails because a civil conspiracy must be pleaded with particularity under Rule 9(b) and the conclusory allegations of the complaint are not adequate. *Id.* at pp. 10-12. The FDUPTA claim purportedly fails because it does not allege harm or injury to any consumer. *Id.* at pp. 12-14. Defendant argues that the claim for fraud is not pleaded with specificity and Plaintiff fails to allege that Redstone knowingly made any false statement(s) of fact for the purpose of inducing Plaintiff to act in reliance, or that Plaintiff acted in reliance on any such alleged false statement(s). *Id.* at pp. 14-15.

The Sherman Act claim is purportedly deficient because it fails to allege that Redstone engaged in any predatory or anticompetitive conduct, had a specific intent to monopolize, or had a dangerous probability of achieving monopoly power. *Id.* at p. 16. Additionally, Defendant argues that Plaintiff has not pleaded the required allegations that the alleged conspiracy unreasonably restrains trade, or that the alleged restraint on trade tends or is reasonably calculated to prejudice the public interest. *Id.* at p. 17.

Redstone also argues that AFC is directly identified and implicated by, and would likely have joint and several liability under, the civil conspiracy and Sherman Act claims in Counts III and VI, and must be joined as a necessary and indispensable party under Rule 19, Federal Rules of Civil Procedure, as AFC's absence would prevent the Court from affording complete relief. *Id.* at pp. 17-18. It argues that for liability to be imposed under these two claims, the Court must determine that Redstone and AFC were both members of a conspiracy, and proceeding with the claims would expose AFC to substantial prejudice and an inability to combat any such finding. *Id.* at p. 18. It requests the Court join AFC or dismiss Counts III and IV. *Id.* at p. 19.

Lastly, Redstone argues that Plaintiff has improperly alleged an entitlement to punitive damages without obtaining leave of Court and without providing any evidentiary showing or proffer to support such claims for punitive damages and that the improper references must be stricken. *Id.*

In response, Plaintiff withdraws, without prejudice, its claims for punitive damages. [Doc. 25 at p. 17]. Otherwise, it contends that the motion should be denied as all the claims are sufficiently pleaded and Defendant has not adequately demonstrated that a necessary and indispensable party has not been joined. *Id.* at p. 1. In explaining the sufficiency of its claims, Plaintiff identifies the elements of each claim and the specific allegations in support of the claim. *Id.* at pp. 7-16. Additionally, Plaintiff contends that Defendant has incorrectly stated the law as to FDUTPA and that the statute defines consumer broadly enough to include Plaintiff and its franchisees—contrary to what Defendant argues. *Id.* at p. 12. Plaintiff also contends that the particularity requirement for fraud is less stringently applied if the alleged fraud occurred over an extended period of time and the acts are numerous, which it purports is the case here, and that the facts concerning these allegations will be developed more fully as discovery proceeds. *Id.* at pp. 14-15.

As to the argument that Plaintiff has failed to join AFC, Plaintiff contends, among other things, that Defendant has not demonstrated how AFC is an indispensable party, nor why complete relief cannot be accorded among existing parties without AFC and has not cited any case in which a court has held that co-conspirators must be joined in the same action. *Id.* at pp. 7, 16. According to Plaintiff, all that is required is that co-conspirators are identified with sufficient particularity. *Id.* at p. 16. In addition, Plaintiff contends that the Court can accord complete relief to the parties and that Defendant has not demonstrated that AFC has an interest relating to

the subject of the action, nor how the protection of any such interest would be impeded if AFC is not joined. *Id.* at p. 17.

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). However, legal conclusions "are not entitled to the assumption of truth" and "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *McArdle v. City of Ocala*, 418 F. Supp. 3d 1004, 1006 (M.D. Fla. 2019) (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009), then quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

Additionally, Federal Rule of Civil Procedure 9(b) places more stringent pleading requirements on claims alleging fraud. Fed. R. Civ. P. 9(b). "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place, and substance of the defendant's alleged fraud." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (citation and internal quotations omitted). A Plaintiff is thereby required to set forth "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (internal quotation marks omitted) (citing *Clausen*, 290 F.3d at 1310). Failure to satisfy the particularity requirement under Rule 9(b) amounts

8

to failure to state a claim until Rule 12(b)(6). *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

When considering a motion to dismiss, the court ordinarily will not look beyond the four corners of the complaint. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). However, "the . . . court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard is satisfied when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). By contrast, dismissal is appropriate when "no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group, Inc.*, 459 F.3d 1305, 1308 (11th Cir. 2006) (quoting *Marshall Cty. Bd. Of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).[2]

When analyzing a motion to dismiss for failing to join a required party pursuant to Rule 19, a two-step test is applied. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,

---

[2] Generally, a court "must give a plaintiff at least one opportunity to amend the complaint before dismissing the action with prejudice." *Smith v. City of Fort Pierce*, No. 2:18-CV-14147, 2018 WL 5787269, at *5 (S.D. Fla. Nov. 5, 2018).

344 F.3d 1263, 1279 (11th Cir. 2003). "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible." *Fla. Wildlife Fed'n Inc. v. United States Army Corps of Engineers*, 859 F.3d 1306, 1316 (11th Cir. 2017) (quoting *Focus on the Fam.*, 344 F.3d at 1280). "If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Id.*

## III.   DISCUSSION

Defendant has raised arguments as to the adequacy of the six claims and the absence of AFC, a purported indispensable party, as to two of those claims. The Court will address each accordingly.

<u>Sufficiency of Claims</u>

a.   *Tortious Interference with Business Relationships – Count I*

Under Florida law, tortious interference with a business relationship requires proof of four elements: "(1) the existence of a business relationship[;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Duty Free Americas, Inc. v. Estee Lauder Companies*, Inc., 797 F.3d 1248, 1279 (11th Cir. 2015) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla.1994)). Defendant challenges the first element by arguing that Plaintiff has alleged a business relationship with "prospective franchises" but has failed to specifically identify any persons or entities that are part of

10

this group. The third element is also placed in issue by virtue of the argument that Plaintiff failed to allege that Redstone unjustifiably interfered with any business and contractual relationships between Plaintiff and AFC and the MDA provided with the complaint shows that the rights granted were not exclusive.

As to the first element, the court agrees that the allegation regarding prospective franchisees is insufficient. "A business relationship need not be evidenced by a contract, but it generally requires 'an understanding between the parties [that] would have been completed had the defendant not interfered.' " *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (quoting *Ethan Allen,* 647 So.2d at 814); *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 F. App'x 785, 791 (11th Cir. 2018) ("While a protected business relationship need not be evidenced by an enforceable contract, it must afford the plaintiff existing or prospective legal or contractual rights.") (quotations omitted). There is no allegation as to any understanding between Plaintiff and any franchisee and the references to franchisees are conclusory. Because of this, the complaint lacks sufficient factual matter to state a plausible claim that there was a business relationship. Plaintiff fails to allege a business relationship with identifiable persons or franchisees, and instead, refers to prospective franchisees. This is insufficient.

The third element, "intentional and unjustified interference with a business relationship, requires the plaintiff to allege that the defendant acted without justification." *Duty Free Americas, Inc*, 797 F.3d at 1280 (quotation omitted). This fact-intensive inquiry requires an examination of the defendant's conduct, its motive, and

11

the interests it sought to advance. Additionally, Florida recognizes a "privilege of interference," which may apply where there is no contract right to have the relationship continued, but only an expectancy. *Id.* "[I]f there is an interference with a non-exclusive right this is a privileged interference." *Jay v. Mobley*, 783 So. 2d 297, 299 (Fla. 4th DCA 2001) (quoting *Int'l Expositions, Inc. v. City of Miami Beach,* 274 So.2d 29, 31 (Fla. 3d DCA 1973)). The Court need not determine at this stage of the litigation, whether the MDA granted to Plaintiff exclusive rights or non-exclusive rights, as such a determination requires evidence outside the four corners of the complaint.  However, the MDA between Plaintiff and AFC contain the following provisions:

PREAMBLES AND BACKGROUND

. . .

E. You have requested that we grant you master developer rights which include the rights to: (1) develop, open and operate Doctors Express Urgent Care Businesses in a mutually-agreed geographic area identified in Exhibit A (the "Territory"); (2) assist us with the sale of franchises (the "Franchises") to third parties (the "Franchisees") who will operate Doctors Express Urgent Care Businesses and/or manage Doctors Express Urgent Care Centers in the Territory; and (3) perform certain initial and ongoing support and assistance functions for (collectively, the "Servicing Responsibilities") and monitor the performance of (collectively, the "Monitoring Responsibilities") Franchisees in the Territory (collectively, the "Master Developer Rights").

1.4   Limited Exclusivity.

Provided that you are in compliance with the terms of this Agreement, we will not grant another master developer the right to solicit Prospects for Doctors Express Urgent Care Businesses in the Territory. Except as expressly

granted by this Section 1.4, we and our affiliates retain all rights with respect to identification of Prospects and Franchisees for Doctors Express Urgent Care Businesses and Doctors Express Urgent Care Centers, the System, operation of businesses under the Marks, the sale of franchises for similar or dissimilar services, the operation of businesses offering similar or dissimilar services and any other activities we deem appropriate whenever and wherever we desire and you acknowledge that we have not granted you any exclusive rights.

. . .

### 22.   ACKNOWLEDGMENTS

You acknowledge:

. . .

(i) That you understand that we will not grant another master developer the right to operate in the Territory; however, we otherwise retain all rights to solicit and engage Referral Sources to solicit franchisees in the Territory.

[Doc. 12-1 at p. 5, 7, 22]. The MDA also provides that its terms shall expire as of the fifteenth anniversary of the Effective Date—September 6, 2009, unless terminated in accordance with its other provisions. *Id.* at p. 9, 5. Upon review of these terms of the MDA, Plaintiff has sufficiently alleged an expectation that it would have exclusive rights to solicit Prospects for Doctors Express Urgent Care Businesses in its Territory for fifteen years, which has not yet elapsed, unless it was not in compliance with the MDA's terms. Additionally, "the privilege of competition is apparently an affirmative defense, whose applicability does not plainly appear from the face of the complaint." *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1240 (M.D. Fla. 2008). Defendant has

sufficiently alleged "an intentional and unjustified interference." The complaint alleges that Defendant was introduced to Plaintiff to assist Plaintiff in developing its Territory, had knowledge of Plaintiff's MDA, induced AFC to breach and terminate the MDA, purchased exclusive rights to develop urgent care centers in three counties within Plaintiff's territory and the right to purchase 17 franchise licenses for locations within Plaintiff's Territory, did so with a conscious desire to prevent the relationship of Plaintiff and AFC from continuing, knew that acts of interference were substantially certain to occur, and was successful in destroying Plaintiff's Master Developer relationship with AFC in its territory. This Count will be dismissed because Plaintiff has failed to sufficiently allege the existence of a business relationship.

b. *Tortious Interference with Contractual Obligations – Count II*

In its motion, Redstone jointly addressed Counts I and II because of the overlap of the elements of those claims. However, recognizing the distinction between a contractual obligation and business relations, the Court has chosen to separately address the claims. "The elements of a Florida law tortious interference with contractual relations claim are: (i) the existence of a contract; (ii) the defendant's knowledge thereof; (iii) the defendant's intentional and unjustified procurement of a breach thereof; and (iv) damages." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin.*, LLC, 904 F.3d 1197, 1215 (11th Cir. 2018). Redstone argues that Count II is subject to dismissal because Plaintiff fails to allege that Redstone unjustifiably interfered with any contractual relationships between Plaintiff and AFC. As pointed out above, the MDA provided Plaintiff with master developer rights. Redstone, aware

14

of Plaintiff's rights, persuaded AFC that it could do a better job of locating and developing prospective franchisees in Plaintiff's territory and to grant to it development rights in Plaintiff's territory. Based upon this persuasion, AFC granted Redstone the ADA and improperly terminated its MDA contract with Plaintiff. As with the previous claim, Plaintiff has sufficiently pleaded interference, i.e., Defendant's intentional and unjustified procurement of a breach. This Count is not subject to dismissal.

   c.  *Civil Conspiracy – Count III*

Redstone next argues that the claim for civil conspiracy is pleaded in conclusory fashion and does not meet Rule 9's particularity standard. A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (stating same). "[T]he gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (quotation omitted). Hence, "a civil conspiracy must have as its object the commission of an underlying tort." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009).

"[A] claim for civil conspiracy must contain clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314

So. 3d 656, 661 (Fla.3d DCA 2021) (citing *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999)); *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012). The Court agrees with Defendant that Plaintiff has not met this standard in pleading its claim for civil conspiracy. The allegations of that count—including the general ones—do not set forth specific information regarding the overt acts, which is the element challenged by Defendant. Instead, Plaintiff merely alleges that "Defendant and AFC knowingly agreed to engage and did engage in one or more overt acts in pursuit of the conspiracy," without identifying any of these overt acts or when they occurred. This does not provide fair notice to Defendant and leaves it to speculate. This Count will be dismissed

   d. *FDUTPA – Count IV*

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (quoting Fla. Stat. § 501.204(1)). Its purpose is to protect the consuming public and legitimate business enterprises from those engaging in such practices. *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008). As such, the plaintiff must have been aggrieved by the alleged unfair and deceptive act in order to bring a claim under this Act. *Id.* To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).

Defendant argues that injury to a consumer is a required element of any FDUTPA claim and it has not been alleged by Plaintiff. The Court agrees that injury to a consumer is required. *Stewart Agency, Inc. v. Arrigo Enterprises, Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019) ("While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, including an injury to a consumer."). Plaintiff has sufficiently alleged harm to itself as a consumer. FDUTPA defines consumer broadly enough to include a business and any commercial entity. Fla. Stat. § 501.203(7). The complaint alleges that Plaintiff is a limited liability company and purchased rights to open and manage urgent care centers in a specified territory. As alleged in the complaint, Plaintiff qualifies as a consumer based on the Act's definition. Additionally, Plaintiff alleges that the actions of Defendant have severely damaged its ability to develop franchises in its purchased territory.

Defendant also argues that the allegations are devoid of any facts, do not reflect a deceptive act or unfair practice, and cannot support the claim for damages. The complaint does not plead a deceptive act or unfair practice. "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quotations omitted). "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "Th[e] standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying

consumer." *Id.* (quotations omitted). Plaintiff generally alleges that it entered into the MDA with AFC in 2009. Around January 2017, AFC introduced it to Redstone as a resource to assist the Master Developers in developing their master territories. It cooperated and worked with Redstone to locate prospective franchisees in its master territory. Despite having knowledge of Plaintiff's MDA with AFC, Redstone entered into the ADA with AFC, which resulted in Redstone replacing Plaintiff as a Master Developer in Plaintiff's purchased territory and AFC's termination of the MDA with Plaintiff. The complaint does not allege any representation, omission or practice of Redstone such as to establish a deceptive act. Likewise, Plaintiff has not pleaded that the acts offend established public policy and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Additionally, the allegations specific to the count are conclusory. Therefore, Plaintiff has not sufficiently pleaded a violation of FDUTPA and this Count will be dismissed.

e. *Fraud – Count V*

"The elements of a fraud claim include (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Bailey v. Covington*, 317 So. 3d 1223, 1227–28 (Fla. 3d DCA 2021) (citing *Lopez-Infante v. Union Cent. Life Ins. Co.*, 809 So. 2d 13, 15 (Fla. 3d DCA 2002)). "It is axiomatic that the facts and circumstances constituting an alleged fraud must be pled with specificity and particularity, even in ordinary civil actions to recover damages." *Daugharty v. Daugharty*, 456 So. 2d 1271,

1274 (Fla. 1st DCA 1984); *Blue Supply Corp. v. Novos Electro Mech., Inc.*, 990 So. 2d 1157, 1159 (Fla. 3d DCA 2008) (stating same and collecting cases). "Particularity means that a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (quotations omitted). Due process requires that the defendant know what he is accused of having misrepresented. *Schopler v. Smilovits*, 689 So. 2d 1189, 1189–90 (Fla.4th DCA 1997); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'").

Redstone argues that Plaintiff has failed to address some of the elements of fraud and has failed to plead with specificity. The Court agrees. The complaint does not allege any false statement made by Redstone, that was done so knowingly, and with the intent to induce any reliance, and which did—in fact—induce reliance by Plaintiff. Instead, it merely alleges that Plaintiff was introduced to Redstone by AFC as a resource that could help with the development of its territory and that Plaintiff worked with Redstone to locate prospective franchisees in its master territory up until Redstone entered an ADA with AFC and terminated the MDA with Plaintiff. This is not enough to state a claim for fraud as Plaintiff has not alleged the who, what, when, where, and other details of the alleged fraud. Additionally, Plaintiff's claim that the

19

particularity requirement should not be stringently applied because of the length of time over which the acts occurred lacks merit. This claim is due to be dismissed.

    f. *Sherman Act – Count VI*

In the last count, Plaintiff alleges that Redstone has engaged in acts which are prohibited by sections 1 and 2 of the Sherman Act. The Court notes that the private cause of action for damages is provided by Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15. *Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.*, 710 F.2d 752, 762 (11th Cir. 1983).

> The prerequisites to a private cause of action under section 4 of the Clayton Act are well established: the plaintiff must show (1) a violation of the antitrust laws, in this case sections 1 and 2 of the Sherman Act, (2) injury to its "business or property," and (3) a causal relationship between the antitrust violation and the injury.

*Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 607 (11th Cir. 1984).

"Section 1 of the Sherman Antitrust Act declares illegal '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations.' " *Am. Contractors Supply, LLC v. HD Supply Constr. Supply, Ltd.*, 989 F.3d 1224, 1232 (11th Cir. 2021) (quoting 15 U.S.C. § 1). It prohibits (1) conspiracies that (2) unreasonably (3) restrain interstate or foreign trade. *Id.* Redstone is correct that Plaintiff has not pleaded the required allegations that the alleged conspiracy unreasonably restrains trade or that the alleged restraint on trade tends or is reasonably calculated to prejudice the public interest.

Instead, it merely alleges that it will suffer as a result of Redstone's actions, which as our case law has repeatedly stated, is not sufficient to state a claim under the Sherman Act. "[I]n interpreting § 1, 'the Supreme Court has long concluded that Congress intended only to prohibit unreasonable restraints on trade.' " *Am. Contractors Supply*, 989 F.3d at 1232 (quoting *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019)). As such, a plaintiff who alleges unfair competition must prove injury to *competition* as antitrust laws are intended to protect competition, not competitors. *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1262 (11th Cir. 1998). The complaint lacks sufficient factual matter regarding the harm to competition. Rather, it only describes the impact that Defendant's conduct has had on its ability to develop franchises under its agreement with AFC and its economic loss.

Plaintiff does not state a claim for relief pursuant to § 2 of the Act for the same reason. "Section 2 of the Act establishes that '[e]very person who shall ... attempt to monopolize ... any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.' " *Duty Free Americas*, 797 F.3d at 1262 (quoting 15 U.S.C. § 2). "A plaintiff alleging a claim for attempted monopolization under § 2 must plausibly assert three things: '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.' " *Id.* at 1263 (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993)). The conduct requirement is arguably the single most important aspect of attempted

21

monopolization, and in order to survive a motion to dismiss, the plaintiff must adequately allege "actual or potential harm to competition." *Id.* "This means the plaintiff must allege a 'factual connection between the alleged harmful conduct and its impact [or likely impact] on competition in the market.' " *Id.* (quoting *Jacobs v. Tempur–Pedic Int'l, Inc.,* 626 F.3d 1327, 1339 (11th Cir.2010)). The complaint contains a conclusory allegation that Defendant is establishing a monopoly. But as explained above, the harm alleged by Plaintiff is not harm to the public. It is personal harm to Plaintiff as a competitor, which is not enough to sustain a claim under the Sherman Act. This Count is also subject to dismissal.

<u>Absence of Indispensable Party</u>

Plaintiff also argues that AFC should be joined as a required party to the civil conspiracy and Sherman Act claims, pursuant to Rule 19, or these claims should be dismissed in AFC's absence. In response, Defendant contends that there is no requirement that co-conspirators be joined in a proceeding and that the Court can accord complete relief in this case. Although the civil conspiracy and Sherman Act violation claims are insufficiently pleaded at this time, the Court will address whether Defendant has shown, based on the current operative complaint, that AFC must be joined.

Again, Rule 19 sets forth a two-step test for this determination. *Focus on the Fam.*, 344 F.3d at 1279. The first step requires the court to ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. *Fla. Wildlife Fed'n Inc.*, 859 F.3d at 1316. It requires a consideration of "whether complete

relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations." *City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999), *certified question answered,* 272 Ga. 612, 533 S.E.2d 372 (2000). In making this determination, "pragmatic concerns, especially the effect on the parties and the litigation, control." *Id.* (quotation omitted). The second step of Rule 19(a) focuses on possible prejudice either to the absent party or the present litigants. *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 670 (11th Cir. 1982). It "asks us to determine, 'in equity and good conscience,' whether the action should go forward as cast." *City of Marietta*, 196 F.3d at 1305. The Rule provides us four factors to consider" and courts are instructed to eschew formalism in favor of flexible practicality. *Id.*

*Civil Conspiracy*

Defendant argues that the first step is met because, among other things, AFC is directly identified and implicated by, and would likely have joint and several liability for the claim, and its presence would not divest the Court of diversity jurisdiction. [Doc. 19 at pp. 17-18]. As an initial matter, Defendant has not shown that joinder is feasible. The unsupported representation that AFC is an Alabama corporation is not enough to demonstrate that diversity jurisdiction will continue to exist if AFC is joined in this action. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th

Cir. 2011) ("It is the burden of the party seeking federal jurisdiction to demonstrate that diversity exists by a preponderance of the evidence.").[3]

Moreover, Defendant has not provided a sufficient basis for joinder of AFC. First, Defendant has not explained why the Court would not be able to accord complete relief between Plaintiff and Defendant pursuant to Rule 19(a)(1)(A). The complaint seeks money damages only. There is no request for injunctive relief, for example, which would require AFC's involvement. *See, e.g.*, *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014) ("Here, the landlords are not necessary parties under Rule 19(a)(1)(A) because the district court could provide 'complete relief' among the litigants without joining the landlords. Winn–Dixie sought legal and equitable relief in the form of damages or an injunction against Big Lots. The district court could award all of the requested relief without haling the landlords into court because Big Lots was fully able to pay damages and comply with injunctions.").

Defendant has also not demonstrated that the requirements of Rule 19(a)(1)(B) are met. It has not indicated what interest relating to the subject of the action is claimed by AFC, that will be impaired if the action is disposed of in AFC's absence.[4] While

---

[3] The existence of diversity jurisdiction is especially important in the event that Plaintiff cannot successfully plead a violation of the Sherman Act, which invokes federal question jurisdiction. The Court notes that Defendant has filed, as supplemental authority, a complaint filed by Plaintiff against AFC Franchising, LLC, in Shelby County, Alabama, in which it is alleged that AFC is an Alabama limited liability company. *See* doc 29.

[4] While Defendant has not identified the interest, it appears that AFC has an interest relating to the subject of the action—granting of the ADA and termination of the MDA—and that disposing of the action in its absence may impair or impede its ability to protect its interest as

the Court acknowledges that the complaint alleges the existence of an agreement between Defendant and AFC, which tends to implicate AFC in a conspiracy, Defendant has not stated the basis on which AFC would be jointly and severally liable in light of its absence as a defendant in this case. "It is a basic principle that a court's judgment will bind only those who are parties to the suit." *Jeffries v. Georgia Residential Fin. Auth.*, 678 F.2d 919, 928 (11th Cir. 1982). Because Defendant has not shown that AFC is a required party, the Court will not proceed to the second step. *See Landmark Equity Fund II, LLC v. Residential Fund 76, LLC*, 631 F. App'x 882, 885 (11th Cir. 2015) ("We proceed to the second step only if we determine that the person at issue is a required party.") (citing *Marietta,* 196 F.3d at 1305).

However, in recognition of the fact that the complaint appears to implicate AFC as involved in a conspiracy, the Court notes that "a joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation." *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999). *But See Lyons v. O'Quinn*, 607 F. App'x 931, 935 (11th Cir. 2015) ("The Advisory Committee Notes to [the 1966 revision of] Rule 19(a) explicitly state that a tortfeasor with the usual joint-and-several liability is merely a permissive party to an action against another with like liability."); *Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970) ("Rule 19, as amended in 1966, was not meant to unsettle the well-

---

to the propriety of its contractual dealings with both Plaintiff and Redstone and whether it conspired to engage in the acts alleged by Plaintiff and to restrain trade.

established authority to the effect that joint tortfeasors or coconspirators are not persons whose absence from a case will result in dismissal for non-joinder."). Therefore, in repleading the claim for civil conspiracy, Plaintiff shall consider the Eleventh Circuit's caselaw and name AFC as a defendant if, among other things, the allegations reflect that AFC is an active participant in the acts that are critical to the disposition of the claim for civil conspiracy and doing so will not divest the Court of Jurisdiction.

*Sherman Act*

Assuming that this claim is sufficiently pleaded, there would be a federal question and joinder of AFC would not deprive the Court of jurisdiction. As with the claim for conspiracy, Defendant has not satisfied Rule 19(a)(1)(A). The complaint alleges that Plaintiff "is entitled to relief as provided in the Sherman Act, 15 U.S.C. Sect. 1, et seq., including treble damages."[5] [Doc. 12 ¶ 72]. It also states that "Plaintiff has and will suffer damages as a consequence . . . in an amount to be determined at trial, but in no event less than $31,000,000.00." *Id.* ¶ 73. Defendant has not indicated why the relief Plaintiff seeks cannot be accorded among the existing parties, and whether it can be provided by AFC. Moreover, Defendant has not indicated the interest relating to the subject of the action claimed by AFC so as to establish that Rule

---

[5] 15 U.S.C. § 1 provides that "[e]very person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court." § 2 sets forth the same relief.

19(a)(1)(B) requires joinder. It is also not clear that AFC's ability to protect that interest would be impaired or impeded or that it would be subject to any obligation considering that "a court's judgment will bind only those who are parties to the suit." *Jeffries*, 678 F.2d at 928. Defendant has not shown, based on the amended complaint, that joinder is warranted. If Plaintiff decides to replead the Sherman Act claim, Plaintiff shall consider the Eleventh Circuit's caselaw and name AFC as a Defendant to this claim if it "emerges as an active participant" in the allegations made in the complaint that are "critical to the disposition of the important issues in the litigation." *Laker Airways, Inc.*, 182 F.3d at 848 (noting that plaintiff's antitrust claims necessarily require that a court evaluate the nonparty's conduct in relation to plaintiff, which substantially implicates the nonparty's interests).  Accordingly, it is

    **ORDERED**:

1. Defendant's Motion to Dismiss Amended Complaint, Join Indispensable Party or Dismiss Counts III and VI, Strike Punitive Damages Claim and Incorporated Memorandum of Law in Support [Doc. 19] is **GRANTED-IN-PART** and **DENIED-IN-PART**. Counts I, and III through VI of the amended complaint are dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

2. Defendant's request to join an indispensable party or dismiss Counts III and VI are denied as Defendant failed to meet the requirements of Rule 19, Fed. R. Civ. P.

3.  Defendant's request to strike punitive damages is denied as moot. Plaintiff has withdrawn any claim for punitive damages.

4.  Plaintiff is granted leave to file a second amended complaint on or before September 28, 2021, which cures the deficiencies addressed in this Order.

**DONE AND ORDERED** in Tampa, Florida on September 14, 2021.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

28